| | |
|---|---|
| **RICHARD BEST TRANSFER, INC., A California Corporation; and CHARLES LITTLEFIELD, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**Honorable Judge KIMBERLY A. GAAB of the California Superior Court, Fresno County, in her official capacity,**<br><br>Defendant. | 1:19-cv-00020-LJO-SAB<br><br>**MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO DISMISS (ECF Nos. 9, 10 & 13)** |

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

## I. <u>INTRODUCTION</u>

Plaintiffs Richard Best Transfer, Inc. ("RBT") and Charles Littlefield ("Littlefield") (collectively, "Plaintiffs") filed this lawsuit on January 3, 2019, alleging two causes of action (one for injunctive and one for declaratory relief) against Defendant Fresno County Superior Court Judge Kimberly A. Gaab ("Judge Gaab"). *See generally* ECF No. 2, Complaint. According to the Complaint, this action arises from a discovery order Judge Gaab issued in Fresno County Superior Court Case No. 17CECG01022 ("Underlying Action"). *Id*. at ¶ 7. Through a civil rights claim brought under 42 U.S.C. § 1983, Plaintiffs assert here that Judge Gaab's discovery order deprives them of rights protected by the Fifth Amendment and Fourteenth Amendment to the U.S. Constitution. *Id*. at ¶ 1.

Before the Court for decision are motions to dismiss filed by Judge Gaab, ECF No. 13, and Defendant Intervenor in this lawsuit (as well as defendant and cross-complainant in the Underlying Action), Archer Daniel's Midland Company ("ADM"). ECF Nos. 9 & 10. Judge Gaab argues that the

Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because the claims are barred under the *Rooker-Feldman* doctrine, the Eleventh Amendment, and/or the *Younger* abstention doctrine, and because Plaintiffs lack Article III standing. *See* ECF No. 13 at 4-9. ADM's motion is premised on the *Rooker-Feldman* doctrine and the Eleventh Amendment only. ECF No. 10. Alternatively, Judge Gaab argues that the Complaint should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) based on judicial immunity. ECF No. 13 at 8-9. The matter was taken under submission on the papers pursuant to Local Rule 230(g). ECF No. 24. For the reasons set forth below, the motions to dismiss are GRANTED on the ground that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

## II. **FACTUAL BACKGROUND**

The Underlying Action was filed by RBT against ADM on March 28, 2017, alleging ADM and its agents wrongfully extorted money from RBT. *Id*. at ¶¶ 9-10. ADM filed a cross-complaint against RBT and other individuals and entities, alleging theft, misappropriation of property, and other related claims. *See id*. at ¶ 10.

The parties engaged in discovery in the Underlying Action until on or about June 7, 2018, at which time Plaintiffs learned that one of the cross-defendants in the underlying action, Thomas Berry Sciafe, dba Sciafie Commodities, had received a federal grand jury subpoena requesting "all records relating to any transaction facilitated through Richard Best Transfer or AMR consulting." *Id*. at ¶ 13. Thereafter, Plaintiffs filed a motion to stay the Underlying Action pending the resolution of the parallel criminal case. *Id*. at ¶ 14. Judge Gaab denied that motion without prejudice on August 28, 2019. *Id*. On September 19, 2018, RBT filed an amended response to ADM's request for production of documents in the Underlying Action, objecting to all 410 requests on the ground that RBT's person(s) most knowledgeable were asserting their Fifth Amendment rights against self-incrimination. *Id*. at ¶ 16. On October 5, 2018, ADM filed a motion to compel. *Id*. at ¶ 17. Judge Gaab granted the motion on November 20, 2018, requiring RBT to produce documents in response to ADM's request for production

2

and explicitly rejecting RBT's objections regarding self-incrimination. *Id*. at ¶ 20 & Ex. 4.

On December 28, 2018, RBT filed a Petition for Writ of Mandate or Other Appropriate Relief and Request for Immediate Stay in the California Fifth District Court of Appeal, requesting that the California Appellate Court stay discovery production and trial, issue a preemptory writ of mandate, and direct Judge Gaab to vacate her ruling directing RBT to produce documents. *Id*. at ¶ 21. The Fifth District Court of Appeal summarily denied the writ on December 28, 2018. *Id*. at ¶ 22. The record does not indicate whether RBT pursued any further review of the writ.

The Complaint in this case takes issue with the reasoning (or alleged lack thereof) provided by Judge Gaab in her ruling on the motion to Compel. *Id*. at ¶¶ 23-27.

### III. <u>STANDARDS OF DECISION</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp*., 655 F.2d 968, 968-69 (9th Cir. 1981). A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). As explained in *Safe Air for Everyone v. Meyer*:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

373 F.3d 1035, 1038 (9th Cir. 2004).

### IV. <u>DISCUSSION</u>

Judge Gaab and ADM advance numerous grounds for dismissal, all of which are more complex than the parties acknowledge. After considering the arguments in light of the entire record, the Court believes it is most efficient to focus on the application of the *Rooker-Feldman* doctrine, pursuant to

3

which federal courts lack jurisdiction to review or modify state court judgments. *See Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).[1] "Underlying the analysis in *Rooker* and *Feldman* is the interpretation of two federal statutes: 28 U.S.C. § 1331 [("Section 1331")] and 28 U.S.C. § 1257 [("Section 1257")]." *Nicholson v. Shafe*, 558 F.3d 1266, 1271-72 (11th Cir. 2009). Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising" under federal law. Section 1257 provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari" when certain federal questions arise. 28 U.S.C. § 1257(a). Taken together, the *Rooker-Feldman* doctrine draws a "negative inference" from section 1257: "because Congress only provided for review of state court judgments by the Supreme Court, Congress therefore intended to preclude lower federal courts from exercising such review." *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 21 (1st Cir. 2005).

"The *Rooker-Feldman* doctrine bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing

---

[1] Analysis of Eleventh Amendment and judicial immunity are complicated by the prayers for declaratory relief, which are at least arguably prospective in nature. *See* Compl. at 10 (requesting declaration that the "policy, custom, usage and practice of Defendant in denying Plaintiffs' right to invoke their respective Fifth Amendment Rights Against Self-Incrimination on account of their categorization as a corporation/collective entity and a corporate agent is a denial of the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States"); *see also Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000) (recognizing that courts have interpreted the Eleventh Amendment to permit suits for "prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law"); *Weldon v. Kapetan*, No. 117CV01536LJOSKO, 2018 WL 2127060, at *5 (E.D. Cal. May 9, 2018), reconsideration denied, No. 117CV01536LJOSKO, 2018 WL 2318040 (E.D. Cal. May 22, 2018) (reasoning that "neither the doctrine of judicial immunity nor Section 1983's immunity language specifically precludes claims for prospective declaratory relief").

Likewise, *Younger v. Harris*, 401 U.S. 37 (1971), abstention bars federal courts from interfering "with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). For *Younger* to apply to civil cases, however, it must implicate an important state interest. *Id.* at 432. While certain types of challenges to discovery determinations have been found to satisfy this requirement, *see Griffiths v. Judicial Arbitration & Mediation Servs., Inc.*, 77 F.3d 489 (9th Cir. 1996) (challenge to judge's referral of discovery dispute to independent referee under state statute implicates important state interest embodied in state statute permitting the practice); *Marciano v. White*, 431 Fed. Appx. 611, 614 (9th Cir. 2011) (challenge to state court's issuance of discovery sanctions implicates power that "lies at the core of the administration of a State's judicial system"), it is not clear that this requirement is satisfied for the type of discovery order at issue here.

party's claim that the state judgment itself violates the loser's federal rights." *In re Harbin*, 486 F.3d 510 (9th Cir. 2007) (internal citations omitted). The doctrine applies even when the challenge to the state court decision involves federal constitutional issues. *See Dubinka v. Judges of Sup. Ct.*, 23 F.3d 218, 221 (9th Cir. 1994) (citations omitted). *Rooker-Feldman* bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the "de facto equivalent" of such an appeal. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003); *see also Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). To determine whether an action functions as a *de facto* appeal, the Ninth Circuit instructs courts to "pay close attention to the relief sought by the federal-court plaintiff." *Cooper*, 704 F.3d 777-78 (internal quotation marks and citation omitted). "It is a forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Id.* at 778 (quoting *Noel*, 341 F.3d at 1163).

In *Cooper*, the Ninth Circuit recognized that "the Supreme Court has been very sparing in its invocation of the doctrine," and explained that "[t]he doctrine does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)). The Supreme Court found claims barred under *Rooker-Feldman* only in the two flagship cases that gave the doctrine its name. *See Rooker*, 263 U.S. 413; *Feldman*, 460 U.S. 462. In those cases, the plaintiffs, having lost in state court, "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005). Such suits were "out of bounds" and were properly dismissed for lack of subject matter jurisdiction. *Id.* at 283-84. But, the Supreme Court has cautioned that:

> The *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284.

Understanding exactly what *Exxon* and post-*Exxon* authorities mean for application of *Rooker-Feldman* here requires a review of the foundational authorities. The Supreme Court provided a helpful summary in *Exxon*:

> In *Rooker* [], 263 U.S. 413, the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it "null and void." *Id*., at 414-415. [The Supreme] Court noted preliminarily that the state court had acted within its jurisdiction. *Id*., at 415. If the state-court decision was wrong, the Court explained, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." *Ibid*. Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was "strictly original." *Id*., at 416. Among federal courts, the *Rooker* Court clarified, Congress had empowered only [the Supreme] Court to exercise appellate authority "to reverse or modify" a state-court judgment. *Ibid*. Accordingly, the Court affirmed a decree dismissing the suit for lack of jurisdiction. *Id*., at 415, 417.
>
> Sixty years later, the Court decided [] *Feldman*, 460 U.S. 462. The two plaintiffs in that case, Hickey and Feldman, neither of whom had graduated from an accredited law school, petitioned the District of Columbia Court of Appeals to waive a court Rule that required D.C. bar applicants to have graduated from a law school approved by the American Bar Association. After the D.C. court denied their waiver requests, Hickey and Feldman filed suits in the United States District Court for the District of Columbia. *Id*., at 465-473. The District Court and the Court of Appeals for the District of Columbia Circuit disagreed on the question whether the federal suit could be maintained, and we granted certiorari. *Id*., at 474-475.
>
> Recalling *Rooker*, [the Supreme] Court's opinion in *Feldman* observed first that the District Court lacked authority to review a final judicial determination of the D.C. high court. "Review of such determinations," the *Feldman* opinion reiterated, "can be obtained only in [the Supreme] Court." 460 U.S., at 476. The "crucial question," the Court next stated, was whether the proceedings in the D.C. court were "judicial in nature." *Ibid*. Addressing that question, the Court concluded that the D.C. court had acted both judicially and legislatively.
>
> In applying the accreditation Rule to the Hickey and Feldman waiver petitions, [the] Court determined, the D.C. court had acted judicially. *Id*., at 479-482. As to that adjudication, *Feldman* held, [the Supreme] Court alone among federal courts had review authority. Hence, "to the extent that Hickey and Feldman sought review in the District Court of the

> District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints." *Id*., at 482. But that determination did not dispose of the entire case, for in promulgating the bar admission rule, [the] Court said, the D.C. court had acted legislatively, not judicially. *Id*., at 485-486. "Challenges to the constitutionality of state bar rules," the Court elaborated, "do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding." *Id*., at 486. Thus, the Court reasoned, 28 U.S.C. § 1257 did not bar District Court proceedings addressed to the validity of the accreditation Rule itself. *Feldman*, 460 U.S., at 486. The Rule could be contested in federal court, [the] Court held, so long as plaintiffs did not seek review of the Rule's application in a particular case. *Ibid*.
>
> The Court endeavored to separate elements of the Hickey and Feldman complaints that failed the jurisdictional threshold from those that survived jurisdictional inspection. Plaintiffs had urged that the District of Columbia Court of Appeals acted arbitrarily in denying the waiver petitions of Hickey and Feldman, given that court's "former policy of granting waivers to graduates of unaccredited law schools." *Ibid*. That charge, the Court held, could not be pursued, for it was "inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny [plaintiffs'] petitions." *Id*., at 486-487.
>
> On the other hand, the Court said, plaintiffs could maintain "claims that the [bar admission] rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association," for those claims "do not require review of a judicial decision in a particular case." *Id*., at 487. The Court left open the question whether the doctrine of *res judicata* foreclosed litigation of the elements of the complaints spared from dismissal for want of subject-matter jurisdiction. *Id*., at 487-488.

*Exxon*, 544 U.S. at 284-87.

*Exxon* concerned a commercial dispute between two subsidiaries of ExxonMobil ("Exxon subsidiaries") that had formed a joint venture with Saudi Basic Industries Corp. ("SABIC") to produce polyethylene in Saudi Arabia. *Id*. at 289. In early 2000, the parties "began to dispute royalties that SABIC had charged the joint ventures for sublicenses to a polyethylene manufacturing method." *Id*. SABIC preemptively sued the Exxon subsidiaries in Delaware state court in July 2000, seeking a declaratory judgment that certain royalty charges were proper under the joint venture agreements. *Id*.

7

Approximately two weeks later, the Exxon subsidiaries sued SABIC in the United States District Court for the District of New Jersey, alleging SABIC company overcharged the Exxon subsidiaries for their sublicenses. *Id*. The state court action proceeded to trial, and, eventually, a substantial jury verdict was entered in favor of the Exxon subsidiaries in March 2003. *Id*.

Before the state court trial, SABIC moved to dismiss the federal action on grounds unrelated to *Rooker-Feldman*. *Id*. at 289-90. The New Jersey district court denied the motion to dismiss, and SABIC took an interlocutory appeal. *Id.* at 290. In December 2003, more than eight months after the state jury verdict, the Third Circuit Court of Appeals, on its own motion, raised the question of whether subject matter jurisdiction was lacking under *Rooker-Feldman*. *Id*. The Court of Appeals rejected Exxon's argument that *Rooker-Feldman* could not apply because Exxon filed its federal complaint well before the state court judgment. *Id*. Instead, the Court of Appeals focused on whether a state judgment preceded any federal judgment on the same claims, reasoning that to do otherwise would encourage parties to maintain federal actions as insurance policies while their state claims were pending. *Id.*

The Supreme Court reversed. The opinion began by emphasizing that *Rooker* and *Feldman* "exhibit the limited circumstances" in which a United States district court is precluded from exercising subject matter jurisdiction in an action it would otherwise be empowered to adjudicate. *Id*. at 291. The *Exxon* decision noted that in both *Rooker* and *Feldman* "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id.* The Supreme Court then reiterated the general principle that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction." *Id*. at 292. While "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation . . . . neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id*. at 292 (internal citations

8

omitted). Rather than posing a jurisdictional problem, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id*. at 293. Relatedly, *Exxon* emphasized that nothing stops a district court "from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*. (internal quotation omitted).

Having delineated the scope of the doctrine, the *Exxon* Court then concluded that the Third Circuit was wrong to decline jurisdiction under *Rooker-Feldman*:

> ExxonMobil plainly has not repaired to federal court to undo the Delaware judgment in its favor. Rather, it appears ExxonMobil filed suit in Federal District Court (only two weeks after SABIC filed in Delaware and well before any judgment in state court) to protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue. *Rooker-Feldman* did not prevent the District Court from exercising jurisdiction when ExxonMobil filed the federal action, and it did not emerge to vanquish jurisdiction after ExxonMobil prevailed in the Delaware courts.

*Id*. at 293-94.

A threshold question here is how to apply *Exxon*'s finality holding to the facts of this case. There is some (primarily out-of-circuit) authority that suggests *Exxon* strictly confined *Rooker-Feldman* by returning the doctrine "to its roots," *Nicholson*, 558 F.3d at 1274, *i.e.*, to situations akin to those presented in *Rooker* and *Feldman*, namely where "the losing party in state court filed suit in federal court <u>after the state proceedings ended</u>." *Exxon*, 544 U.S. at 292. For example, several Circuits have held that even where the federal action is filed after a state court jury verdict is entered, where a state appeal remains pending, the issue is not yet final for *Rooker-Feldman* purposes. *Nicholson*, 558 F.3d at 1277-79; *Guttman v. Khalsa*, 446 F.3d 1027, 1031-32 (10th Cir. 2006); *Dornheim v. Sholes*, 430 F.3d 919,

9

923-24 (8th Cir. 2005).[2]

In *Federación*, the First Circuit attempted to define circumstances in which state court proceedings are deemed to have "ended" for purposes of the *Rooker-Feldman* doctrine: (1) "when the highest state court in which review is available has affirmed the judgment below and left nothing to be resolved"; (2) "if the state action has reached a point where neither party seeks further action, . . . [f]or example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire"; and (3) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." 410 F.3d at 24-25. There, the First Circuit examined a lawsuit challenging a decision made by the Puerto Rico Labor Relations Board denying a motion to dismiss a grievance on the ground of federal labor law preemption. *Id*. at 19. The Federación then appealed that denial on an interlocutory basis to the Puerto Rico Court of Appeals and then to the Puerto Rico Supreme Court, without success. *Id*. The Federación the filed an action for declaratory and injunctive relief against the Board in federal district court. *Id*. That court concluded it lacked jurisdiction under *Rooker-Feldman*, a decision the First Circuit affirmed after a lengthy discussion of how *Exxon* applied to the circumstances of that case, including confirming that Supreme Court review would be available for the state courts' interlocutory decisions. *See id*. at 28-29.

The Ninth Circuit endorsed *Federacion*'s reasoning in *Mothershed v. Justices of Supreme Court*, reiterating that proceedings "end" for *Rooker-Feldman* purposes "when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum, even if other issues remain pending at the state level." 410 F.3d 602, 604 n. 1 (9th Cir. 2005); *see also Hiramanek v. Clark*, No. C-

---

[2] It is notable that the Ninth Circuit, albeit in an unpublished decision, appears to have taken a different path, at least under certain circumstances. *See Marciano v. White*, 431 Fed. Appx. 611, *1-2 (9th Cir. 2011) (dismissing for lack of subject matter jurisdiction under *Rooker-Feldman* a lawsuit filed directly against state court judge to overturn decision, despite fact that state court appeal was still pending, distinguishing *Exxon* and reasoning that to do otherwise "would run counter to the doctrine's underlying principle that review of state court decisions must proceed through the state appellate procedure and then to the United States Supreme Court"); *Eicherly v. O'Leary*, 721 F. App'x 625, 626 (9th Cir. 2018) (affirming dismissal under *Rooker-Feldman* of direct challenge to state court decision-making, finding underling state court decisions sufficiently final for *Rooker-Feldman* purposes even though at least one of multiple cases remained pending on appeal).

13-0228 EMC, 2014 WL 107634, *8 n. 11 (N.D. Cal. Jan. 10, 2014) ("The Ninth Circuit seems to have endorsed the First Circuit's approach in *Federacion*," citing *Mothershed*). The Ninth Circuit also specifically indicated in *Mothershed* that "[a] state supreme court's interlocutory ruling will [ ] trigger the *Rooker-Feldman* doctrine's applicability where such ruling constitutes the final determination of an issue." 410 F.3d at 604 n. 1.

    *Mothershed* is instructive here. In that case, in underlying proceedings, Mothershed was censured by the State Bar of Arizona for engaging in the unauthorized practice of law in Arizona. *Id*. at 605. Then, the Oklahoma Bar Association initiated disciplinary proceedings against and eventually disbarred Mothershed for engaging in the unauthorized practice of law in Arizona. *Id*. Mothershed sued numerous judges and officials in the Arizona and Oklahoma judicial systems and the relevant bar associations and officials. *Id*. He alleged that the processes used in the disciplinary proceedings in both states violated his due process and other constitutional and federal statutory rights. *Id*. At some point during the underlying proceedings, Mothershed sought a writ of mandamus to halt the Oklahoma disciplinary proceedings against him. That request was denied by the Oklahoma Supreme Court. *See id*. at 604 n. 1. In affirming the federal district court's decision to dismiss certain of Mothershed's claims on *Rooker-Feldman* grounds, the Ninth Circuit reasoned that "state court proceedings ended for *Rooker-Feldman* purposes when the Oklahoma Supreme Court denied Mothershed's request that it issue a writ of mandamus halting the Oklahoma bar disciplinary proceedings against him. That [ ] state court ruling finally resolved . . . that Mothershed's due process rights therefore were not violated, which represent the same issues that Mothershed subsequently sought to relitigate in federal district court." *Id*.

    Plaintiffs assert that *Rooker-Feldman* should not be applied here because the issues raised in the motion to compel in the Underlying Action have not been finally resolved. ECF No. 18 at 7. They assert that in California "the general rule regarding discovery motions is that litigants must wait until a final judgment to appeal a discovery order, or may apply for a Writ of Mandate requesting the appellate court exercise its discretionary power, which it rarely does." *Id*. (citing 15-B, Jon B. Eisenberg, et al., Cal.

Prac. Guide: Civ. Appeals & Writs (The Rutter Group), § 15:42 *et seq*. ("Rutter Cal. Prac. Guide. Civ App. & Writs")). In this way, Plaintiffs attempt to distinguish the present situation from *Mothershed*. The Court does not find this reasoning persuasive. First, it is not at all clear that this is a valid basis upon which to distinguish *Mothershed*, as the Ninth Circuit made a point of noting in that case that denial of an extraordinary writ in the Oklahoma system was sufficient to satisfy the finality requirement of *Rooker-Feldman*. Moreover, the legal landscape in California relevant to discovery disputes involving privileges is more complicated than Plaintiffs acknowledge. "Despite the general rule disfavoring writ review of discovery matters, writ review [in California] is appropriate when petitioner seeks relief from an order which may undermine a privilege. [Citations.] . . . [I]nterlocutory review by writ is the only adequate remedy in such cases, since once privileged matter has been disclosed there is no way to undo the harm which consists in the very disclosure. [Citation.]" *Raytheon Co. v. Superior Court*, 208 Cal. App. 3d 683, 686 (1989); *see also St. Mary v. Superior Court*, 223 Cal. App. 4th 762, 773 (2014) ("Review of discovery rulings by extraordinary writ proceedings is generally limited to situations where (1) the issues presented are of first impression and of general importance to the trial courts and to the profession, (2) the order denying discovery prevents a party from having a fair opportunity to litigate his or her case, or (3) the ruling compelling discovery would violate a privilege.") (internal citations and quotation omitted); 15-B Rutter Cal. Prac. Guide. Civ App. & Writs, § 15:42 (discussing same). For practical purposes, then, California law acknowledges that the relief Plaintiffs seek in resisting the underlying motion to compel (avoidance of production based upon the privilege against self-incrimination) must be obtained through a writ or not at all. Plaintiffs pursued the writ process to the intermediate appellate level, where the California Fifth District Court of Appeal summarily denied the writ on December 28, 2018. Compl. at ¶ 22. Nothing in the record suggests Plaintiffs pursued the writ process further. The Court concludes that the discovery order is therefore final for purposes of *Rooker-Feldman*.

That does not end the inquiry, however. To determine whether the *Rooker-Feldman* bar is

applicable, a district court must determine whether the action contains a forbidden de facto appeal of a state court decision. *Noel*, 341 F.3d at 1158. The Ninth Circuit has identified two forms of de facto appeals: (1) where a federal plaintiff "complain[s] of harm caused by a state court judgment that directly withholds a benefit (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by the court"; and (2) where a federal plaintiff complains "of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id*. at 1163. In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id*. at 1164. As mentioned, to determine whether an action functions as a de facto appeal, courts in the Ninth Circuit are instructed to "pay close attention to the relief sought by the federal-court plaintiff." *Cooper*, 704 F.3d at 777-78 (internal quotation marks and citation omitted). "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel*, 341 F.3d at 1163

Here, there is no question that the claims in this case involve a forbidden *de facto* appeal. The Complaint is premised entirely on the allegation that Judge Gaab's order was legally erroneous. Specifically, the Complaint alleges in "Count 1 (Injunctive Relief)" that in the context of the order compelling Plaintiffs to produce documents, Judge Gaab's failed to rule on the "true and proper definitions of the terms 'person' and 'witness' as used in the Fifth Amendment and their impact, if any, on current Supreme Court case law interpreting the Fifth Amendment which do not undertake an interpretation/definition of the two terms," all of which amounted to "a deprivation of Plaintiffs' rights protected by the Fifth Amendment an Fourteenth Amendment to the Constitution of the United States." Compl. ¶ 29. The Complaint then demands "a permanent injunction forever restraining and enjoining Defendant and her agents from denying Plaintiffs' Fifth Amendment Rights Against Self-Incrimination solely on account of their classification as a corporation/collective entity and corporate agent." Compl. at 10.

13

If "a federal plaintiff seeks to bring a forbidden *de facto* appeal, . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158; *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). To the extent an issue is "inextricably intertwined" with an issue resolved by the local court in its judicial decision, "the federal district court could not address that issue, for the district court would be, in effect, hearing a forbidden appeal from the judicial decision of the local court." *Noel*, 341 F.3d at 1157. For example, some of the claims brought in *Feldman* were inextricably intertwined with the state court judicial decision, while others were not. The *Feldman* plaintiffs' as-applied challenge to the way the District of Columbia courts treated their request for a waiver from state bar rules was, in effect, a request that the district court decide an issue that was "inextricably intertwined" with a judicial decision of a local court. As the Ninth Circuit explained in its review of *Feldman* in *Noel*, "[t]he local court had applied the rule to the plaintiffs over their objection that the application violated" the U.S. Constitution, and "[t]he plaintiffs now brought essentially the same challenge in the district court." 341 F.3d at 1157. On the other hand, the plaintiffs' facial challenge to a rule on the ground that it created an irrebuttable presumption that only graduates of accredited law schools are fit to practice law and therefore discriminates against those who have obtained equivalent legal training by other means was not "inextricably intertwined' with the judicial decision of the local court. *Id*. at 1157 & n. 6. "Instead, it was a general challenge to the constitutionality of the rule, unrelated to any particular application." *Id*. at 1157.

The Ninth Circuit has turned to the following "succinct guidance from Justice Marshall" in identifying what issues are inextricably intertwined with a forbidden appeal:

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive

14

> the federal proceeding as, in substance, anything other than a prohibited
> appeal of the state-court judgment.

*Cooper*, 704 F.3d at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). Thus, the Ninth Circuit has "found claims inextricably intertwined where the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Id*. (internal citations and quotation omitted).

The claims in this case are all inextricably intertwined with the merits of the state court order. As mentioned, the Complaint alleges in "Count 1 (Injunctive Relief)" that in the context of her order compelling Plaintiffs to produce documents, Judge Gaab failed to rule on the "true and proper definitions of the terms 'person' and 'witness' as used in the Fifth Amendment and their impact, if any, on current Supreme Court case law interpreting the Fifth Amendment which do not undertake an interpretation/definition of the two terms," all of which amounted to "a deprivation of Plaintiffs' rights protected by the Fifth Amendment an Fourteenth Amendment to the Constitution of the United States." Compl. ¶ 29. This is exactly the kind of claim barred in *Feldman*, one in which a local court applied a body of law in a manner over Plaintiffs' objection and where Plaintiffs now bring essentially the same challenge in this Court.

"Claim 2 (Declaratory Relief)" fares no better. There, Plaintiffs complain that Judge Gaab's interpretation of the Fifth Amendment in the order she entered in the Underlying Action is "wholly unreasonable." Compl. at ¶ 34. Plaintiffs complain that acting in accordance with the order would "be detrimental to the Plaintiffs, in that they would be forced to waive a sacred constitutional right . . . ." *Id*. As mentioned, the Complaint demands "a permanent injunction forever restraining and enjoining Defendant and her agents from denying Plaintiffs' Fifth Amendment Rights Against Self-Incrimination solely on account of their classification as a corporation/collective entity and corporate agent." Compl. at 10. The Complaint also asks this court to "declare the rights and legal relations of the parties to the subject matter here in controversy, in order that such declaration shall have the force and effect of a final

| | |
|---|---|
| 1 | judgment or decree." Compl. at 10. Finally, the Complaint requests that this Court |

> enter a judgment declaring that the such policy, custom, usage and practice of Defendant in denying Plaintiffs' right to invoke their respective Fifth Amendment Rights Against Self-Incrimination on account of their categorization as a corporation/collective entity and a corporate agent is a denial of the equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States and is therefore unconstitutional.

*Id*. No part of the complaint can be untangled from the underlying state court order. Therefore, *Rooker-Feldman* applies to bar the entirety of Plaintiffs' Complaint.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the pending motions to dismiss are GRANTED. IT IS SO ORDERED. Because the Court cannot envision any way the above-mentioned defects can be cured by amendment, this dismissal is WITHOUT LEAVE TO AMEND. Accordingly, the Clerk of Court is directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated: **April 3, 2019**           /s/ Lawrence J. O'Neill
                                   UNITED STATES CHIEF DISTRICT JUDGE